

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00164-CR

SORIANO ANGEL DOMINGUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7
Dallas County, Texas
Trial Court No. F12-11228-Y

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

In Dallas County,[1] Texas, Soriano Angel Dominguez was charged with the aggravated assault of Jose Romero with a deadly weapon (a knife). A jury found Dominguez guilty of the charge, and the trial court sentenced him to fifteen years' confinement.[2]

Dominguez raises three points on appeal: (1) he maintains that the trial court erred by precluding him from questioning the venire panel regarding the enhanced punishment range; (2) he posits that there is insufficient evidence to support the assessment of court costs against him; and (3) he contends that there was error in the judgment because it does not accurately reflect the plea that he entered or the jury's finding on enhancement.

We modify the judgment to reflect a plea of "not true" to the enhancement allegations and the jury's finding of "true" on the enhancement issue, and we affirm the judgment, as modified.

I.      Factual Background

Dominguez was employed at an automobile repair shop when he met Romero and his wife, Gloria Romero, who operated a lunch truck that stopped at the repair shop. The Romero family agreed to let Dominguez stay at their home in Balch Springs until he was able to afford a

---

[1]Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]The available punishment range of two to twenty years' confinement attributed to the crime of aggravated assault with a deadly weapon was enhanced by Dominguez' prior felony conviction for aggravated assault with a deadly weapon to a range of five to ninety-nine years' confinement. TEX. PENAL CODE ANN. §§ 12.32(a), 12.33(a), 22.02(b) (West 2011), § 12.42(b) (West Supp. 2013).

place of his own.[3] Dominguez had lived with the Romeros for several days when they detected he was beginning to act strangely.

On November 30, 2012, Jose was alone in the house with Dominguez, and Jose was walking upstairs when he noticed Dominguez standing at the top of the stairs looking down at him. Jose testified that he asked Dominguez what was going on, and Dominguez replied that he was "thinking what he was going to do." According to Jose, Dominguez took his shirt off, pulled out a large kitchen knife, and began stabbing Jose in the arm. Jose struck Dominguez with a belt to fend him off and then ran downstairs and out the front door.

Dominguez testified at trial, contradicting Jose's testimony. Dominguez claimed that Jose had suddenly and unexpectedly attacked him with a belt buckle as Dominguez sat at the top of the stairs of the house peeling an orange with a knife. Dominguez said that after he had been attacked by Jose, he waved the knife at Jose in order to defend himself. He claimed to be unaware of the reason for Jose's attack. After their confrontation, they both ran down the stairs and, as Jose ran out the front door, Dominguez contends that he ran to the kitchen with the intent of calling the police. However, he went to the door and saw a patrol car driving down the street. Still holding both the knife and the telephone, Dominguez went to the street "to look at the street sign" when a police officer approached him, instructed him to put the knife on the ground, and had him relate his version of the events that had transpired.

---

[3]Dominguez testified that he rented a room in their house for $350.00 per month.

**II. Did the Trial Court Err by Preventing Dominguez from Questioning the Venire Panel Regarding the Enhanced Range of Punishment?**

The available range of punishment for the offense of aggravated assault with a deadly weapon (from two to twenty years' confinement) was enhanced in this case by a prior felony conviction to a range of five to ninety-nine years' confinement. *See* TEX. PENAL CODE ANN. §§ 12.32(a), 12.33(a), 12.42(b), 22.02(b). In his first point of error, Dominguez contends that the trial court erred by precluding him from questioning the venire panel regarding the enhanced range of punishment. He argues that because he could not ask the jurors for their views on the possible range of punishment, he was "denied the opportunity to intelligently exercise his jury challenges" and, therefore, "should be granted a reversal and a new trial."

The trial court may impose reasonable restrictions on voir dire examination. *Thompson v. State*, 267 S.W.3d 514, 517 (Tex. App.—Austin 2008, pet. ref'd) (citing *Boyd v. State*, 811 S.W.2d 105, 115 (Tex. Crim. App. 1991)). "We review the trial court's decision to limit voir dire under an abuse of discretion standard. *Id.* The trial court abuses its discretion when it limits a proper question concerning a proper area of inquiry." *Id.* (citing *Dinkins v. State*, 894 S.W.2d 330, 345 (Tex. Crim. App. 1995); *Boyd*, 811 S.W.2d at 115).

The Texas Court of Criminal Appeals has repeatedly held that both the State and the accused have the right to inform the jury of the range of punishment applicable to an offense (including an enhanced range of punishment) and to qualify the panel on the full possible range of punishment applicable to the case. *Martinez v. State*, 588 S.W.2d 954, 956 (Tex. Crim. App. [Panel Op.] 1979); *Hart v. State*, 173 S.W.3d 131 (Tex. App.—Texarkana 2005, no pet.). A juror must be able to consider the full range of punishment for an offense, and a defendant's voir

4

dire question about a juror's ability to do so is generally proper. *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010); *see* TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (West 2006). If a juror cannot consider an offense's full range of punishment, the juror is subject to a challenge for cause. *Cardenas*, 325 S.W.3d at 184–85; *see also Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001); *Banda v. State*, 890 S.W.2d 42, 55 (Tex. Crim. App. 1994) (explaining that "person who testifies unequivocally that he could not consider the minimum sentence as a proper punishment for [an] offense . . . is properly the subject of a challenge for cause").

While the enhanced punishment range is a proper subject during voir dire, "[i]f an appellant does not actually frame a question to the trial court, nothing is preserved for review." *Dewalt v. State*, 307 S.W.3d 437, 457 (Tex. App.—Austin 2010, pet. ref'd) (citing *Caldwell v. State*, 818 S.W.2d 790, 794 (Tex. Crim. App. 1991)). Likewise, error is not preserved where an appellant merely informs the trial court of the general subject area from which he seeks to propound questions. *Id.* (citing *Sells v. State*, 121 S.W.3d 748, 756 (Tex. Crim. App. 2003)). Consequently, to preserve error, an appellant "must show that he was prevented from asking particular questions that were proper." *Sells v. State*, 121 S.W.3d 748, 756 (Tex. Crim. App. 2003). "That the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated is not enough because the trial court might have allowed the proper question had it been submitted for the court's consideration." *Id.* (citing TEX. R. APP. P. 33.1(a)(1)(A)). Furthermore, a party waives "any error relating to the voir dire process" when

he affirmatively states he has no objection to the jury as seated. *Harrison v. State*, 333 S.W.3d 810, 812 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

At trial, the following exchange took place during voir dire, outside the presence of the prospective jurors:

> THE COURT: Okay. And there is an enhancement paragraph, which, if proven true, would make the punishment range in this case from five to 99 years or life.
> [Defense Counsel], I will go with you on this. You want me to voir dire on five to 99 penalty range or 2 to 99 penalty range?
>
> [DEFENSE COUNSEL]: I believe probably the first-degree would be appropriate.
>
> THE COURT: In other words, you don't think there's going to be any problem in proving the enhancement paragraphs?
>
> [DEFENSE COUNSEL]: To be on the safe side, we can say in some instances it can go up to first-degree without being specific.
>
> THE COURT: I'm going to do 2 to 99.
>
> . . . .
>
> THE COURT: . . . 45 minutes for voir dire, and we're voir diring on 2 to 99 punishment range in the event the enhancement paragraph is not proven to be true.
>
> [DEFENSE COUNSEL]: So I have -- in certain circumstances, it can be enhanced. You want me to delete that from the power point?
>
> THE COURT: Yes.
>
> [DEFENSE COUNSEL]: I can.
>
> THE COURT: Anything else to be taken up before the jury gets here?
>
> [DEFENSE COUNSEL]: I don't believe so.

[THE STATE]:  Nothing from the State.

THE COURT:  All right. Thank you.

Here, Dominguez has not preserved his voir dire complaint for review.  Dominguez lodged no objection to the trial court's decision regarding the punishment range to be discussed during voir dire.  Even if he had done so, there is nothing in the record to reveal what particular questions counsel was prevented from asking the panel.  *See Sells*, 121 S.W.3d at 756. Dominguez also failed to object to the jury as seated.  *See Harrison*, 333 S.W.3d at 812. Accordingly, we overrule this point of error.

### III.    Is There Sufficient Evidence to Support the Assessment of Court Costs?

In his second point of error, Dominguez argues that there is insufficient evidence to support the assessment of $244.00 in court costs because there is no certified bill of costs in the record.  Contrary to Dominguez' assertions in his brief, the record now contains a certified bill of costs.

If a criminal action is appealed, "an officer of the court shall certify and sign a bill of costs stating the costs that have accrued and send the bill of costs to the court to which the action or proceeding is transferred or appealed."  TEX. CODE CRIM. PROC. ANN. art. 103.006 (West 2006).  "A cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost."  TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2006).

Since a certified bill of costs is in the record and because Dominguez has voiced no challenge to any specific cost contained therein, we overrule this point of error as moot.

**IV.     We Modify the Judgment to Correctly Reflect Dominguez' Plea to the Enhancement Allegations and the Jury's Finding on the Enhancement Issue**

In his final point of error, Dominguez contends that the judgment is erroneous because it fails to accurately recite either his plea to the allegations in the enhancement paragraph or the jury's finding on the enhancement issue. The State agrees with Dominguez and asks this Court to modify the judgment.

The judgment lists "N/A" as to Dominguez' plea to the enhancement allegations and the jury's finding on the enhancement issue. However, the record establishes both that Dominguez entered a plea of "not true" to the enhancement allegations and that the jury found the allegations of the enhancement paragraph to be "true." The Texas Rules of Appellate Procedure give this Court authority to modify judgments and correct typographical errors to make the record speak the truth. TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Gray v. State*, 628 S.W.2d 228, 233 (Tex. App.—Corpus Christi 1982, pet. ref'd). Accordingly, we modify the judgment to reflect Dominguez' plea of "not true" to the enhancement allegations and to show the jury's finding of "true" on the enhancement issue.

8

We affirm the trial court's judgment, as modified.



Bailey C. Moseley
Justice

Date Submitted:    April 16, 2014
Date Decided:      May 8, 2014

Do Not Publish